HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ANNE BLOCK,

        Plaintiff,

    v.

SNOHOMISH COUNTY, et al.,

        Defendants.

CASE NO. C14-235RAJ

ORDER

## I.  INTRODUCTION

This matter comes before the court on two motions to dismiss Plaintiff Anne Block's complaint, as well as a motion to sanction Ms. Block.  No one has requested oral argument, and the court finds oral argument unnecessary.  For the reasons stated below, the court GRANTS the motions to dismiss (Dkt. ## 12, 13), dismisses Plaintiff's complaint, and orders her to submit an amended complaint in compliance with this order no later than December 23, 2014.  The court GRANTS in part and DENIES in part the motion for sanctions.  Dkt. # 40.  Parts III and IV of this order contain specific instructions to Ms. Block as to filing her amended complaint and to the parties as to their conduct in this litigation.  The clerk shall LIFT THE STAY that the court imposed in its July 29, 2014 order.

## II.  BACKGROUND

It is not the court's practice to begin orders with discussions of the conduct of one of the litigants.  This is no ordinary case.  The court has already stayed it so that it could

ORDER – 1

ensure that Ms. Block did not continue to misuse this litigation as a weapon in her campaign against officials in the City of Gold Bar and Snohomish County. Although the court will lift that stay in this order, it cannot do so without imposing restrictions on Ms. Block's conduct. The record before the court suggests that Ms. Block's desire to make life more difficult for the employees and officials she targets has overridden her basic obligations in litigating this case. In particular, as the court will soon discuss, her complaint fails to state a claim. This order is designed to allow Ms. Block an opportunity to articulate a claim while ensuring that her conduct in pursuing this litigation complies with standards of decency that apply to the parties who appear before this court.

## A.    Ms. Block's Conduct

The record before the court reveals that this case, in which Ms. Block contends that various Defendants associated with the City of Gold Bar and Snohomish County violated her First and Fourteenth Amendment Rights, is but a part of a larger campaign. In the course of pursuing this lawsuit, Ms. Block has threatened additional lawsuits against at least two of the Defendants and against counsel for the Defendants. She has offered no evidence to counter Defendants' evidence that in conversations with Defendants' counsel about this case, she uses abusive profanity to refer to individual Defendants. Evidence from two witnesses that Ms. Block twice called one of Defendants' attorneys a "piece of shit" while visiting a Snohomish County building is more compelling than Ms. Block's bare denial that she did so. She has lobbed unsubstantiated accusations that Defendants' counsel and Defendants themselves have threatened her with violence. She has shared those unsubstantiated allegations with Snohomish County officials who are not Defendants and has made efforts to broadcast those allegations to the public. She has used public records requests revealing telephone records of Defendants' attorneys to contact others to share the same unsubstantiated allegations. Although she brought this case, she has refused to satisfy basic case obligations, including her obligation to meet and confer with opposing counsel regarding

ORDER – 2

case scheduling, and her obligation to timely respond to motions.  She does so, moreover, while chastising counsel for Defendants for unspecified (and, so far as the court is aware, wholly imaginary) violations of court rules.

There is, in short, much evidence that Ms. Block had conducted herself in a blustering and boorish fashion, both as a litigant in this case and as a citizen of Snohomish County.  From a personal perspective, the court sympathizes with those who must deal with her abysmal behavior.  From a legal perspective, however, there is relatively little that the court can do.  As Ms. Block is quick to point out, she has a right to behave abominably, provided she does not violate criminal statutes, other laws, or court rules.  The court has inherent authority to regulate the conduct of the parties who appear before it, and it has exercised that authority.  On July 29, after Defendants brought evidence of some of Ms. Block's more egregious conduct before the court, the court stayed this litigation and prohibited virtually all case-related communication between Ms. Block and Defendants and their counsel.  The court will continue to do what it can to ensure that communications related to this action are conducted civilly.  The court cannot, however, prevent Ms. Block from continuing to harangue whomever she chooses as part of her ongoing campaign against Snohomish County and others.  This court presides over this litigation; it does not preside over Ms. Block's conduct outside this litigation.

Among the unfortunate consequences of Ms. Block's conduct is that while the record amply reveals that she spends substantial time in her campaign to harry County employees and others, she has apparently devoted little time to articulating her claims in this lawsuit.  In public discourse, nothing prevents Ms. Block from lobbing unsubstantiated allegations.  In this lawsuit, she will ultimately bear the burden of proving her allegations.  For now, she must at least articulate those allegations in a way that plausibly states a claim upon which the court can grant relief.  As the court will now discuss, the complaint before the court does not plausibly state a claim.

ORDER – 3

**B.      Allegations of Ms. Block's Complaint**

Ms. Block has sued fourteen Defendants for violating 42 U.S.C. § 1983.  Five of the Defendants (the "Gold Bar Defendants") are the City of Gold Bar, its current and former mayor, and two members of its city council.  The remaining nine Defendants (the "County Defendants") are Snohomish County and eight of its current and former officers or employees.  Six of the County Defendants are current employees or officers represented by the same counsel, two of the former employees or officials (Aaron Reardon and John Rudicil) have different counsel.  It is these two groups of County Defendants who have filed the motions to dismiss before the court.  Neither the Gold Bar Defendants nor Defendant Kevin Hulten (a County Defendant represented by separate counsel) have joined the motions.

According to Ms. Block, the County Defendants are liable both for retaliating against her for exercising her First Amendment rights and for conspiring to retaliate.  The court describes the facts as Ms. Block alleges them in her operative complaint.[1]  The court suggests no opinion on the truth of those allegations.

In 2008, Ms. Block began serving Gold Bar officials with a series of public records requests.  Gold Bar was ill-equipped to respond to the requests, and was forced to undergo substantial expense to respond.  Displeased with Ms. Block's requests (as well as her enforcement efforts and follow-up requests), the Gold Bar Defendants "agreed among themselves to retaliate against Plaintiff."  ¶ 3.3.  Ms. Block alleges nothing about when this agreement occurred or how it occurred.

Ms. Block became convinced that Defendant John Pennington (a Snohomish County Defendant) had unspecified "involvement" with his wife, Defendant Crystal

---

[1] At the time Defendants filed their motions to dismiss, Ms. Block's original complaint (Dkt. # 1) was the operative complaint.  Later, Ms. Block filed an amended complaint.  Dkt. # 39.  So far as the court can tell, the sole significant difference between the two complaints is that the latter contains four new assertions regarding Defendant Kevin Hulten, who has not joined in either of the motions to dismiss.  Because there is no material difference between the two complaints as to the moving Defendants, the court treats the motions to dismiss as if they targeted the later complaint.  The court cites that complaint using bare "¶" symbols.

ORDER – 4

Pennington (who was, at the time, the Mayor of Gold Bar), "regarding personal legal work on government equipment and servers . . . ." ¶ 3.6.  She thus served public records requests on Snohomish County, seeking communications between Mr. and Mrs. Pennington.  *Id.*  Later, when she learned that Mr. Reardon, the Snohomish County Executive, "was paying with taxpayer money for out of town trysts with two women," she filed more public records requests.  *Id.*  She also filed unsuccessful recall petitions targeting Mr. Reardon and several Gold Bar elected officials.  *Id.*

The complaint points to a February 2013 article in the Snohomish County Herald in which two reporters concluded that Mr. Hulten and Mr. Rudicil were responsible for creating aliases to anonymously distribute content on the internet that was generally supportive of Mr. Reardon (for whom they worked) and dismissive of Mr. Reardon's critics (including Ms. Block).  ¶ 3.8.  The article contends that the two men created an entry about Ms. Block on the Wikipedia website.  Ms. Block characterizes the Wikipedia entry as an "attack site[]," but she does not include a copy of the entry or any excerpt of it in her complaint.  *Id.*  According to the article, Wikipedia moderators removed the entry from the website.

Mr. Reardon resigned as County Executive in May 2013.  ¶ 3.9.

According to Ms. Block, six of the individual County Defendants (Mr. Reardon, Mr. Pennington, Mr. Rudicil, Mr. Hulten, Brian Parry, and Christopher Shwarzen) "agreed with the [Gold Bar Defendants] to retaliate against [her] . . . ." ¶ 3.10.  She alleges nothing about when this agreement occurred or how it occurred.  She offers a laundry list of accusations of retaliatory conduct that resulted from this conspiracy between the Gold Bar Defendants, but those allegations raise more questions than they answer.  As to all but a few of the allegations, the biggest question (at least for purposes of the motions before the court) is how the County Defendants are responsible for the conduct she asserts.

ORDER – 5

For example, Ms. Block alleges that unnamed Gold Bar Defendants "[a]greed to harm [her] law practice, [her] finances, [and her] reputation and physical safety." ¶ 3.4(a).  Who agreed?  When did they agree?  How did they harm her law practice, her finances, or her reputation or physical safety?  How did the County Defendants participate?  She alleges that the Gold Bar Defendants "[a]ccused her of being mentally ill," but she offers no explanation of who accused her, when, or in what forum.  ¶ 3.4(b). She also does not explain how the County Defendants participated in making that accusation.  The same unanswered questions surround her allegations that someone "[m]aligned and belittled [her] law practice,"[2] ¶ 3.4(c), that someone "[p]ublically [sic] stat[ed] to another city council member that 'I have no use for non-Christians like Block,'" ¶ 3.4(g), that someone "[t]elephoned [a] federal administrative law judge in San Francisco where [she] practice[s] administrative law . . . to complain of [her] first amendment activity," ¶ 3.4(h), and that someone "[p]ublish[ed] false information about [her]," ¶ 3.4(k).  In many of her allegations, she points to documents that Defendants used to retaliate against her, but she declines to either attach the document to her complaint or excerpt it.  For example, she contends that Gold Bar Defendants filed complaints against her with the Washington State Bar Association ("WSBA") using public resources, but she does not include or excerpt the complaints.  ¶ 3.4(d).  Again, she offers no explanation at all of how the Snohomish County Defendants are involved with the WSBA complaints.  Similarly, she decries Defendants for contributing "defamatory, derogatory, untruthful and harmful articles about [her] to the Sky Valley Chronicle, an on-line blog-newspaper at least partly controlled by several of the Defendants . . . ," but she does not attach or excerpt any of these articles.[3]  ¶ 3.4(i).  She asserts that someone

---

[2] Although Ms. Block's original complaint included the allegation that she was an "attorney licensed to practice in the State of Washington, with an office in Monroe, Washington," her amended complaint deletes that allegation.  *Compare* Compl. (Dkt. # 1) ¶ 2.1 *with* Amend. Compl. (Dkt. # 39) ¶ 2.1.

[3] Ms. Block attached two Sky Valley Chronicle articles to her opposition to the motions to dismiss, but that does not suffice to make them part of her complaint.

ORDER – 6

"[i]gnored criminal complaints [she] filed with city and county law enforcement officers," ¶ 3.4(j), but declines to attach or excerpt the complaints.

Other allegations are somewhat more specific as to the acts of the Gold Bar Defendants, but are wholly silent as to how they implicate any County Defendant. Many of her allegations, for example, concern actions taken by Gold Bar officials at Gold Bar city council meetings. ¶¶ 3.4(m), (n), (v), (w). Other allegations concern actions by Gold Bar Defendants that leave the court guessing as to how any County Defendant is involved. ¶¶ 3.4(e), (s), (t), (u), (x), (z).

A few of her allegations against the Gold Bar Defendants expressly refer to one or more County Defendants. For example, she asserts that unnamed Gold Bar Defendants conspired with Mr. Pennington to obtain her criminal history from the Washington State Patrol and the FBI, and to "disseminate[] the information ambiguously as though it constituted criminal history." ¶ 3.4(o). The same people obtained the "mental health history" for someone other than Ms. Block, then disseminated the history to others, characterizing it as Ms. Block's history. ¶ 3.4(p). She contends that Gold Bar's mayor and Mr. Pennington, Mr. Reardon, Mr. Hulten, and Mr. Rudicil conspired to create the Wikipedia entry and to distribute it to multiple people. ¶ 3.4(r).

In addition to her allegations of a conspiracy between the County Defendants and Gold Bar Defendants, Ms. Block includes several allegations arising out of an alleged conspiracy solely among the County Defendants. As was the case with her broader conspiracy allegations, she says nothing about when this conspiracy occurred or how it occurred. She offers another laundry list of accusations of retaliatory conduct that resulted from this conspiracy, many of which are duplicative of accusations the court has already discussed. Again, these allegations raise more questions than they answer. Unnamed persons at Snohomish County "used its Sheriff's Officer" to gather evidence from Gold Bar to support a criminal complaint against Ms. Block for "cyber stalking." ¶ 3.10(a). Ms. Block alleges that the "complaint failed," but she provides no information

ORDER – 7

1    about the content of the complaint.  *Id.*  Unnamed Snohomish County Defendants

2    "refused to investigate or report upon" unspecified complaints from Ms. Block

3    "concerning threats to her and her property."  ¶ 3.10(b).  Mr. Pennington allegedly filed

4    multiple WSBA complaints against Ms. Block, but Ms. Block is wholly silent about the

5    content of the complaints.  ¶ 3.10(f).

6           Ms. Block contends that these allegations state a claim that the Defendants

7    retaliated against her for exercising her First Amendment rights, which is itself a

8    violation of the First Amendment.[4]  Invoking § 1983, she seeks compensatory and

9    punitive damages.  Two groups of County Defendants have moved to dismiss, invoking

10   Federal Rule of Civil Procedure 12(b)(6), which permits the court to dismiss a complaint

11   that fails to state a claim on which the court can grant relief.

12          The court now considers the motions to dismiss.

### III.  ANALYSIS OF MOTIONS TO DISMISS

14          Rule 12(b)(6) requires the court to assume the truth of the complaint's factual

15   allegations and credit all reasonable inferences arising from those allegations.  *Sanders v.*

16   *Brown*, 504 F.3d 903, 910 (9th Cir. 2007).  The plaintiff must point to factual allegations

17   that "state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550

18   U.S. 544, 568 (2007).  If the plaintiff succeeds, the complaint avoids dismissal if there is

19   "any set of facts consistent with the allegations in the complaint" that would entitle the

20   plaintiff to relief.  *Id.* at 563; *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("When there

21   are well-pleaded factual allegations, a court should assume their veracity and then

---

[4] Ms. Block also points to two acts by the Gold Bar government that allegedly deprive her of "liberty and due process rights secured and protected by the First, Fifth and Fourteenth Amendments to the United States [C]onstitution."  ¶¶ 4.2, 4.3.  The court ignores for today that the Fifth Amendment protects citizens only from the federal government, and that the First Amendment does not protect a generic "liberty" interest or due process rights.  Instead, it observes that there is no allegation that these acts implicate the County Defendants, and that Ms. Block did not respond when the County Defendants pointed this out.  Defs.' Mot. (Dkt. # 12) at 6 n.5.  The court thus does not consider whether Ms. Block has stated plausible claims other than those invoking the First Amendment.  Ms. Block, however, must consider whether she has stated plausible Due Process Clause claims when she files her amended complaint.

ORDER – 8

determine whether they plausibly give rise to an entitlement to relief.").  The court typically cannot consider evidence beyond the four corners of the complaint, although it may rely on a document to which the complaint refers if the document is central to the party's claims and its authenticity is not in question.  *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006).  The court may also consider evidence subject to judicial notice.  *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

**A.    Elements of a First Amendment Retaliation Claim**

When a government official takes action in retaliation for protected expression, or for the purpose of chilling that expression, the official violates the First Amendment. *Sorrano's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1984); *Hartman v. Moore*, 547 U.S. 250, 256 (2006) (declaring that "the law is settled that as a general matter, the First Amendment prohibits government officials from subjecting an individual to retaliatory actions . . . for speaking out").  A state official may not take action in retaliation for activity that the First Amendment protects, including ordinary speech, petitioning the government for redress, and actions taken in furtherance of First Amendment activity.  *See Sorrano's Gasco*, 874 F.2d at 1313-14 (considering claim of retaliation by state regulators against plaintiff who publicly criticized them); *Skoog v. County of Clackamas*, 469 F.3d 1221, 1231 (9th Cir. 2006) (considering claim of search in retaliation for plaintiff's lawsuit against county and county officials); *CarePartners, LLC v. Lashway*, 545 F.3d 867, 876 (9th Cir. 2008) (considering claim of retaliation for plaintiff's administrative appeals, court actions, lobbying, public advocacy, and statements to media).  A plaintiff who is the victim of retaliation in violation of the First Amendment can invoke § 1983, which permits a suit for damages for violations of constitutional rights by an official acting "under color" of state law.

A First Amendment retaliation claim requires the plaintiff to prove that the defendant took action that would deter a reasonable person from engaging in First Amendment activities, and that the "desire to cause the chilling effect was a but-for cause

ORDER – 9

of the defendant's action." *Skoog*, 469 F.3d at 1232.[5]  A plaintiff need not prove that

retaliatory action actually inhibited or suppressed First Amendment activity.

> Because it would be unjust to allow a defendant to escape liability for a
> First Amendment violation merely because an unusually determined
> Plaintiff persists in his protected activity, we conclude that the proper
> inquiry asks whether an official's acts would chill or silence a person of
> ordinary firmness from future First Amendment activities.

*Mendocino Env'l Ctr. v. Mendocino County*, 192 F.3d 1283, 1300 (9th Cir. 1999)

(internal quotation omitted).  In proving that a retaliatory motive was the but-for cause of

a retaliatory action, the plaintiff bears the burden of making a prima facie case that

retaliation was at least a substantial or motivating factor in the decision to take the

challenged action.  *CarePartners*, 545 F.3d at 877.  A plaintiff who does so successfully

shifts the burden to the defendant to prove that she would have taken the same action

even in the absence of a retaliatory motive.  *Id.*  The defendant must show not merely that

it *could* have taken the challenged action without a retaliatory motive, but that it *would*

actually have done so.  *Id.*; *see also Sorrano's Gasco*, 874 F.2d at 1316.

**B.     Ms. Block Has Not Plausibly Asserted a Retaliation Claim.**

    The court now considers' Ms. Block's retaliation claims, which meet at least some

of the requirements noted above.  First, she alleges that she petitioned both Gold Bar and

Snohomish County via her public records requests, thus satisfying her obligation to point

to activity that the First Amendment protects.  Second, she points to a host of conduct

that could plausibly deter a reasonable person from engaging in First Amendment

activity.  Ms. Block points to at least a dozen different acts, some of which (*e.g.*,

---

[5] The court states the requirements of a generic First Amendment retaliation claim, noting that
more stringent requirements apply in some specific circumstances.  Claims of retaliation by a
government employee against her employer, for example, carry several restrictions that do not
apply outside the employment context.  *See CarePartners,* 545 F.3d at 880-882 (declining to
extend public concern requirement and balancing test from *Pickering v. Bd. of Educ.*, 391 U.S.
563 (1968), outside context of retaliation by government employer against employee).  Claims of
criminal prosecution in retaliation for First Amendment activity require a plaintiff to prove the
absence of probable cause, a requirement that does not apply outside the context of prosecution.
*Compare Hartman*, 547 U.S. at 265-66 (requiring plaintiff claiming retaliatory prosecution to
prove lack of probable cause), *with Skoog*, 469 F.3d at 1233-35 (declining to extend *Hartman* in
case claiming that search was retaliatory even though police had probable cause).

ORDER – 10

disseminating mental health records falsely attributed to her, using Wikipedia to defame her, refusing to respond to requests for assistance in responding to threats to her or her property) easily clear the hurdle that they carry the potential to chill the exercise of a reasonable person's First Amendment rights.  Others, like an unnamed Gold Bar council member's statement that he or she "ha[d] no use for non-Christians like Block," are arguably insufficient.  Rather than inquire into whether each act Ms. Block complains of plausibly carries the requisite potential to deter First Amendment activity, the court reminds Ms. Block to consider that requirement when she rewrites her complaint.

Ms. Block's complaint fails in at least two respects.  First, for many of her allegations of retaliatory conduct, her complaint is insufficient to establish that a County Defendant is responsible.  Second, even where she has included enough detail to permit a person reading her complaint to attribute specific conduct to a County Defendant, she has not plausibly pleaded that a retaliatory motive was a substantial factor motivating that conduct.

Ms. Block relies on generic allegations that make it impossible, in large part, to know which Defendant or Defendants, if any, were responsible for alleged misconduct. She repeatedly declines to name names, instead generically claiming that "Defendants" are responsible.  Who took actions to harm her law practice?  When?  Who threatened her physical safety?  Who accused her of mental illness?  Who defamed her law practice? Who contacted an administrative law judge to complaint about her?  Who contributed defamatory articles to the Sky Valley Chronicle?  Who ignored her criminal complaints? To whom did she complain?  The court focuses on questions about who is responsible for the wrongdoing Ms. Block alleges, but in many instances, the court would also ask "What?" or "How?"  What actions harmed her law practice?  What was the content of these allegedly defamatory articles?  In some instances, Ms. Block may not know the information necessary to answer these questions, but she can remedy that by including

ORDER – 11

enough detail in her complaint to demonstrate the plausibility of her belief that a
Defendant is responsible.

For those allegations of misconduct in which it is clear which Defendant or
Defendants are responsible, Ms. Block offers only conclusory allegations of conspiracy
as a basis for making the remaining Defendants liable.  The court has no difficulty, for
example, concluding that the Gold Bar Defendants are the Defendants whom Ms. Block
accuses of retaliating against her at Gold Bar council meetings or in Gold Bar ordinances,
but there is nothing in the complaint that makes it plausible to conclude that any County
Defendant is responsible for those acts.  Ms. Block's bare allegations of conspiracy,
which appear throughout her complaint, are wholly insufficient.

One of the County Defendants is Tamera Doherty.  With the exception of a
paragraph stating her job title and wholly conclusory allegations of retaliation, ¶ 2.13,
Ms. Doherty is nowhere mentioned in Ms. Block's complaint.  No person reading her
complaint could conclude that Ms. Block plausibly alleged any wrongdoing on Ms.
Doherty's part.

Even where Ms. Block's complaint reveals who is responsible for a particular
action, it does not plausibly allege a retaliatory motive.  Take, for example, Diana Rose, a
County Defendant who is allegedly responsible for "physically remov[ing] county
records delivering public records to the City of Gold [Bar]," ¶ 3.4(q), and "refus[ing] to
obtain and release public records relating to [Mr.] Pennington's WSBA complaints when
she received [Ms. Block's] public records [request]," ¶ 3.10(g).  What is missing is any
plausible reason to conclude that Ms. Rose took these actions with the intent to retaliate
against Ms. Block.  That Ms. Rose allegedly did not respond properly to a public records
request does not make it plausible that she did so with the intent to chill Ms. Block's First
Amendment expression.  *See Wood v. Yordy*, 753 F.3d 899, 905 (9th Cir. 2014) ("[M]ere
speculation that defendants acted out of retaliation is not sufficient.").

ORDER – 12

1    Other allegations describe actions for which a lawful motive is as likely (or more

2    likely) than a retaliatory one.  For example, Ms. Block complaints that an unnamed

3    person telephoned an administrative law judge to complain about her.  Ms. Block gives

4    no reason to believe that action was taken with a retaliatory motive.  Without more detail,

5    it is just as plausible (if not more plausible) to conclude that the person complained to the

6    judge because the person believed Ms. Block had done something meriting a complaint.

7    The same is true of Ms. Block's allegations about WSBA complaints that Defendants

8    made against her.  She discloses no information about those complaints, making an

9    inference that the complainants made them because they were meritorious just as

10   plausible (if not more plausible) than an inference that a Defendant made them with a

11   retaliatory motive.

12         The court declines to point out the deficiencies in every one of Ms. Block's

13   allegations.  It suffices to summarize by observing that her strategy seems to be to point

14   out that she engaged in activity that the First Amendment protects, then to point out that

15   some (usually unnamed) Defendants took actions (usually vaguely described) adverse to

16   her, then to assume that every one of those actions was made with retaliatory intent.  That

17   strategy has led to a complaint that fails to state a plausible claim against the County

18   Defendants.

19         Ms. Block must replead her complaint.  The court reaches that conclusion

20   reluctantly.  Ms. Block did not ask for leave to amend her complaint, and nothing in her

21   opposition to Defendants' motions to dismiss suggests to the court that she will remedy

22   the defects in her complaint if given an opportunity.  Indeed, she used her opposition to

23   emphasize the shortcomings of her complaint.  She continued to assert that unnamed

24   Defendants were responsible for unspecified misconduct.  She attached several articles

25   she downloaded from the internet, but did not explain the relevance of most of them.  She

26   included what she contends is the result of a King County Sheriff's investigation into Mr.

27   Rudicil and Mr. Hulten, but she does not explain how those results illuminate her claims.

28   ORDER – 13

1    She attaches articles from the Sky Valley Chronicle, but neither explains how they are
2    retaliatory nor why it is plausible to believe that a Defendant is responsible for them.
3    Moreover, the court is concerned, in light of the conduct it has previously described, that
4    Ms. Block is more interested in using this litigation as a forum to sling mud at
5    Defendants than she is in pursuing her retaliation claim to a conclusion.  Nonetheless, the
6    court cannot rule out the possibility that Ms. Block could state a claim against one or
7    more Defendants.  Indeed, it is possible that her current complaint, stripped of vague and
8    conclusory allegations, might state a narrow retaliation claim against somebody.  Her
9    current complaint, however, is too obfuscated to permit the court or a Defendant to find a
10   cognizable claim among allegations that plainly do not state one.  The court will permit
11   her to file an amended complaint.

12          Before concluding its discussion of the complaint before the court, the court notes
13   that it has not addressed several of the arguments Defendants raised in their motions to
14   dismiss.  Because Ms. Block has failed to state a retaliation claim, the court has not
15   decided whether the law that claim relies upon was clearly established, and thus has not
16   considered whether any individual Defendant is entitled to qualified immunity.  Because
17   Ms. Block has yet to plausibly plead a retaliation claim, the court has no basis to decide
18   whether she has pleaded a basis for punitive damages.  The court has also not decided
19   whether Ms. Block has plausibly pleaded a basis to hold either Gold Bar or Snohomish
20   County liable via § 1983, although it observes that Defendants' view of § 1983's
21   limitations on municipal liability is likely too narrow.  Several of the acts Ms. Block
22   complains of are either the official actions of the City of Gold Bar (i.e., public records
23   response policies, municipal ordinances, and other City governance policies) or are
24   actions taken by officials (like the Gold Bar Mayor and the Snohomish County
25   Executive) who have sufficient authority that their acts may be deemed the actions of the
26   government body they represent.  *See Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996).
27   The court also declines to address the contention of Mr. Reardon and Mr. Rudicil that

28   ORDER – 14

Ms. Block has not adequately pleaded that they were acting under color of law with respect to the conduct described in her complaint.  The court expects that when Ms. Block repleads her claims, she will state allegations that make it plausible to believe that each act she complains of is an act under color of law.

With respect to Ms. Block's forthcoming amended complaint, the court orders as follows:

    1)  Ms. Block shall file an amended complaint no later than December 23, 2014.

    2)  The amended complaint shall state name only the current Defendants as parties, although Ms. Block is free to refrain from naming one or more of the current Defendants.  The court is aware that Ms. Block has asserted that she wishes to add parties to this suit, but the court will not consider expanding this already unwieldy action until Ms. Block demonstrates that she can state a cognizable claim.

    3)  If it is necessary to dismiss Ms. Block's amended complaint for the same deficiencies that the court has described in this order, the court will dismiss this case with prejudice.

## IV.  ANALYSIS OF MOTION FOR SANCTIONS

As the court has noted, it can regulate the conduct of the parties with respect to this litigation.  It declines the invitation of the County Defendants to regulate Ms. Block's conduct outside this litigation.

The parties dispute whether Ms. Block should be held to the standards applicable to attorneys who appear before it.  There is no dispute that Ms. Block was, at one time, an attorney licensed to practice in Washington.  According to the WSBA, she is presently suspended from the practice of law.  Ms. Block contends that she resigned from the WSBA, and that the WSBA's failure to recognize her resignation is yet another violation of her First Amendment rights.  Defendants ask the court to treat Ms. Block as an attorney representing a client in this case, but whatever her status as a member of the

ORDER – 15

Washington Bar, she is not acting as an attorney in this case.  She is representing herself.  No party has addressed to what extent Washington's Rules of Professional Conduct apply in these circumstances.  For example, no one has addressed whether a pro se plaintiff who is also an attorney is prohibited from contacting represented opposing parties.

The court need not decide to what extent Ms. Block's status as a member of the Washington Bar restricts her conduct in this case.  The court has the inherent power to regulate the litigation conduct of the parties who appear before it, whether they are attorneys or not.

Defendants' motion for sanctions demonstrates, on a more-probable-than-not basis, that Ms. Block has engaged in the following conduct relating to this litigation.[6]  She has directly communicated with Defendants who have counsel, although she likely ceased doing so after multiple requests from Defendants' counsel.  She has used profanity and abusive language in her communications with Defendants' counsel, both to refer to Defendants and to their counsel.  She has represented to Defendants' counsel that she has created audio recordings of their telephone conversations, although it is not clear whether she has actually done so.

Defendants' motion for sanctions also demonstrates, on a more-probable-than-not basis, that Ms. Block has engaged in conduct that relates to her campaign against Snohomish County (and perhaps the City of Gold Bar), but does not have a sufficient nexus to this case to warrant the court's intervention.  That conduct includes Ms. Block's threats to sue people who are not Defendants in this case, including Defendants' counsel, as well as her threats to attempt to instigate criminal charges.  It includes Ms. Block's

---

[6] In reaching its findings as to Ms. Block's conduct, the court relies on declarations that the County Defendants provided.  One of those declarations is over 100 pages long, but the Defendants provided the court with no courtesy copies.  That violates the court's electronic filing procedures, which require a courtesy copy for any submission whose cumulative length is more than 50 pages.  West. Dist. Wash. Elec. Filing Procedures, § III.G.  It also violates this court's chambers procedures, which require a courtesy copy of any submission whose cumulative length exceeds 50 pages.  The court will strike any future filing for which it does not receive required courtesy copies.

ORDER – 16

communications with members of the public in an apparent effort to demean, embarrass, or harass Defendants and their counsel. It also includes abusive language and scurrilous allegations directed at Mr. Pennington and his wife, but about topics unrelated to this case. The court does not condone that conduct, and does not suggest that it is lawful, it merely concludes that it is not sufficiently related to this litigation to warrant this court's intervention.

With these findings in mind, the court issues the following orders:

1) The court lifts the stay it imposed in its July 29 order, but only as necessary to permit Ms. Block to file her amended complaint and to permit Defendants to respond to it.

2) Discovery shall remain stayed until further order of the court.

3) Defendants shall timely respond to Ms. Block's amended complaint, assuming that she serves it properly or that they accept service.

4) For the remainder of this litigation, no Defendant may file a motion or opposition to a motion in this case without that Defendant's counsel conferring with counsel for all other groups of Defendants. There are currently four groups of counsel representing Defendants in this case, and no one will benefit from their uncoordinated action. Unless a Defendant can point to a compelling reason, the court presumes that a single motion, opposition to a motion, reply brief, or the like, will suffice to state the position of all Defendants.

5) Ms. Block may not communicate directly with any Defendant *about this case* except through that party's counsel of record. Because Snohomish County itself is a represented party, this restriction also prohibits Ms. Block from communicating about this case with individual officers or employees of Snohomish County or the City of Gold Bar who are not Defendants in this case. It does not prohibit Ms. Block from communicating directly with Defendants about topics other than this case. It also does not prohibit her from

ORDER – 17

mentioning this case or its status as necessary in communications otherwise unrelated to this case.

6) Ms. Block may not make audio or video recordings of counsel for Defendants with respect to communications about this case unless she either obtains their express written consent or obtains permission from the court.

7) Ms. Block shall not use profanity or abusive invective in her oral or written communications with counsel.[7] If the court finds that Ms. Block has used profanity or abusive language in communications with Defendants' counsel, the court will impose monetary sanctions.

Defendants have requested, both in their motions to dismiss and in the sanctions motion, that the court award them their attorney fees. The court denies those requests. That conclusion is without prejudice to a motion for attorney fees in the event that Defendants prevail in this litigation. It is also without prejudice to future motions for sanctions. The court warns Ms. Block that it will impose monetary sanctions if she continues to conduct herself inappropriately in this litigation. It will also consider evidentiary sanctions and, if appropriate, dismissal of this action. The court notes that unless it imposes attorney fees as a sanction, or awards attorney fees via a Federal Rule of Civil Procedure that authorizes attorney fee awards as to a particular motion, it will not award attorney fees until the conclusion of this case.

The court observes that 42 U.S.C. § 1988, which permits awards of attorney fees to a prevailing plaintiff in a § 1983 case, also authorizes an award of attorney fees to a prevailing defendant where the plaintiff's case was "unreasonable, frivolous, meritless, or vexatious." *Galen v. County of Los Angeles*, 468 F.3d 563, 577 (9th Cir. 2006) (citation omitted). That standard, which the Supreme Court applied first to prevailing defendants

---

[7] Although the record reflects that Defendants' counsel has largely endeavored, under difficult circumstances, to treat Ms. Block with professional courtesy, counsel occasionally have strayed from this course. For example, the County Defendants referred to some of Ms. Block's allegations as "delusional" on the first page of their motion to dismiss. This neither advances the cause of counsel's clients nor fosters the professional conduct of this litigation.

ORDER – 18

in actions invoking Title VII of the Civil Rights Act of 1964, *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421 (1978), then later to prevailing defendants in § 1983 cases, *Hughes v. Rowe*, 449 U.S. 5, 14-16 (1980), recognizes that prevailing defendants are entitled to attorney fees only in "exceptional circumstances." *Harris v. Maricopa County Sup. Ct.*, 631 F.3d 963, 971 (9th Cir. 2011). It is the prevailing defendant's burden to demonstrate that an award of fees against a plaintiff is appropriate. *Id.* at 972. An action becomes frivolous when "the result appears obvious or the arguments are wholly without merit." *Galen*, 468 F.3d at 577. A plaintiff is charged with knowledge of what a "reasonable inquiry into the applicable facts and law" would who. *Margolis v. Ryan*, 140 F.3d 850, 854 (9th Cir. 1998). A defendant need not demonstrate the plaintiff's "subjective bad faith" to win an award of attorney fees. *Harris*, 631 F.3d at 976. Although a court must recognize that a pro se plaintiff may be less capable of determining whether her case is frivolous, it can nonetheless award § 1988 attorney fees against a pro se plaintiff. *Miller v. Los Angeles County Bd. of Educ.*, 827 F.3d 617, 620 (9th Cir. 1980) (noting that "it is entirely appropriate to hold the plaintiff responsible for knowing that the claim is groundless").

## V.  CONCLUSION

For the reasons stated above, the court GRANTS the motions to dismiss (Dkt. ## 12, 13), dismisses Ms. Block's complaint, and orders her to submit an amended complaint in compliance with this order no later than December 23, 2014. The court GRANTS in part and DENIES in part the motion for sanctions. Dkt. # 40. The clerk shall LIFT THE STAY that the court imposed on July 29, 2014.

DATED this 1st day of December, 2014.

The Honorable Richard A. Jones
United States District Court Judge

ORDER – 19