HONORABLE RICHARD A. JONES

1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8
9    ANNE BLOCK,

10                    Plaintiff,                    CASE NO. C14-235RAJ

11              v.                                  ORDER

12    SNOHOMISH COUNTY, et al.,

13                    Defendants.

14                            **I.  INTRODUCTION**

15         This matter comes before the court on Defendants' motion to dismiss Plaintiff

16    Anne Block's complaint as well as Ms. Block's motion for leave to submit a "RICO

17    Statement."  No one requested oral argument, and the court finds oral argument

18    unnecessary.  For the reasons stated, herein, the court GRANTS the motion to dismiss

19    (Dkt. # 66) and GRANTS the motion regarding the RICO Statement (Dkt. # 73).  The

20    court concludes that Ms. Block will not state claims even if given another opportunity to

21    amend her complaint, and the court therefore declines to grant her another opportunity.

22    The court directs the clerk to DISMISS this action and enter judgment for Defendants.

23                            **II.  BACKGROUND**

24         Because the court considers this case in the context of Defendants' motion to

25    dismiss for failure to state a claim, the court will focus on the allegations of Ms. Block's

26    second amended complaint ("complaint," Dkt. # 62), which the court will cite with bare

27    "¶" symbols.  The court's analysis will require it to recite and discuss many of Ms.

28    ORDER – 1

1   Block's allegations.  Anyone who reads this order to suggest that the court expresses any

2   opinion on the truth of those allegations is mistaken.

3        Ms. Block's complaint comes in the wake of the court's December 1, 2014 order

4   dismissing her previous complaint.  The court ruled that "vague and conclusory

5   allegations" and other defects rendered her previous complaint "too obfuscated to permit

6   the court or a Defendant to find a cognizable claim among allegations that plainly do not

7   state one."  Dec. 1, 2014 ord. (Dkt. # 61) at 14.  The court granted her leave to amend.  It

8   ordered, however, that she could name only the Defendants she had already named,

9   because the court would "not consider expanding this already unwieldy action until Ms.

10  Block demonstrates she can state a cognizable claim."  *Id.*

11       Ms. Block responded by expanding this already unwieldy action.  Whereas her

12  previous complaint asserted only that Defendants (the City of Gold Bar and Snohomish

13  County, along with various current and former officials of those governments) had

14  retaliated against her for exercising her First Amendment rights,[1] her current complaint

15  attempts to state claims invoking the Racketeer Influenced Corrupt Organizations Act

16  ("RICO," 18 U.S.C. §§ 1961-1968) as well as a claim for violations of the Sherman

17  Antitrust Act (15 U.S.C. §§ 1-7).  The RICO and Sherman Act claims, moreover, depend

18  on her assertions not only as to the years-long conflict between Ms. Block and Gold Bar

19  and Snohomish County, but also as to a new group of allegations that Gold Bar and

---

[1] This version of Ms. Block's complaint, like its predecessor, contains a few allegations that Gold Bar somehow violated Ms. Block's Fifth and Fourteenth Amendment rights.  ¶¶ 1.3, 1.4, 2.3, 2.17, 4.2, 4.3.  Ms. Block repeated her Fifth Amendment allegations even after the court pointed out that only those acting on behalf of the *federal* government can violate a plaintiff's Fifth Amendment rights.  Dec. 1, 2014 ord. (Dkt. # 61) at 8 n.4.  To the extent that the court can understand them, Ms. Block's Fourteenth Amendment allegations focus on the assertion that Gold Bar somehow violated the Due Process Clause and Equal Protection Clause by holding government meetings without public participation and by enacting an ordinance regarding responses to public records requests.  These allegations lack enough detail to place anyone on notice of a Fourteenth Amendment violation, and the court will not consider them further.

The one exception is Ms. Block's allegation that a non-party named Geoffrey Gibbs "issued a $8,000.00 judgment [against] [her] . . . without any notice to [her] at all, and as such denied her due process."  ¶ 3.32.  Ms. Block's remedy for that alleged due process violation was to appeal the judgment or otherwise move to set it aside.  She cannot sue over that judgment in this court.

ORDER – 2

Snohomish County officials conspired with the Washington State Bar Association ("WSBA").  Whereas Ms. Block was previously content to allege retaliation against her, her new allegations place her in the midst of what she contends is a criminal enterprise organized for the purpose of controlling the WSBA, targeting attorneys who oppose that criminal enterprise, and controlling the market for attorney services.  Paying lip service (or less) to the court's requirement that she limit her amended complaint to the Defendants she had previously named (there were 14 of them), she added a list of 14 "non-parties to be named later."  ¶¶ 2.16-2.25.  Those non-parties were a smorgasbord of Gold Bar and County officials, persons and entities associated with an "online blog spot" called the Sky Valley Chronicle, ¶3.36, and the WSBA and several of its employees.[2] Moreover, Ms. Block asks the court to consider not only her 41-page complaint, but a 110-page "RICO Statement" that Ms. Block contends makes her claims more plausible. The court will discuss the RICO Statement in this order, and will cite its allegations with the notation "RS at ____."  For now it suffices to note that the RICO Statement's first 45 pages largely repackage the allegations of Ms. Block's current complaint, often verbatim. The remaining pages have nothing to do with Ms. Block – they contain allegations about the WSBA's actions as to attorneys who have no involvement in this case.

Ms. Block ignored both the letter and the spirit of the December 1 order.  She purported to comply with the court's requirement that she not amend her complaint to name new Defendants, but she was unable to keep up her own charade.  Despite Ms. Block's assurance that the "non-parties to be named later" are not defendants, she frequently calls them defendants in her complaint and in her opposition to the motion to

---

[2] Although the "Parties" section of Ms. Block's complaint does not include Linda Loen as either a Defendant or a "non-party to be named later," her complaint repeatedly refers to Ms. Loen as a Defendant.  ¶¶ 3.21, 3.50, 3.52, 3.54, 3.77.  The complaint gave the court no means of knowing who Ms. Loen was.  Only in the RICO Statement does Ms. Block explain that Ms. Loen became Gold Bar's mayor in 2014.  RS at 39.  Ms. Block also asserts that the "Snohomish County Superior Court" is a defendant, ¶ 3.32, without listing that entity as either a Defendant or a "non-party to be named later."  There are many other examples of previously unnamed defendants cropping up in Ms. Block's complaint.

ORDER – 3

dismiss.  The December 1 order required her to submit an amended complaint by December 23.  Ms. Block filed a complaint by that deadline, but waited two weeks to file her unsolicited 110-page RICO Statement.

Ms. Block ignored many of the simplest aspects of the December 1 order.  For example, the court noted that Ms. Block had sued Tamera Doherty but had substantiated her allegations against her with nothing more than a single conclusory paragraph.  Dec. 1, 2014 ord. (Dkt. # 61) at 12.  Ms. Block repeats the same conclusory paragraph in her amended complaint, ¶ 2.13, making no other allegations about Ms. Doherty.  As noted, the court pointed out that Ms. Block could not plausibly state a Fifth Amendment claim where she had pointed to no conduct by the federal government.  *See supra* n.1.  Ms. Block nonetheless repeated her baseless invocation of the Fifth Amendment.  The court observed that Ms. Block's complaint suffered greatly because she did not attach or excerpt the many documents that she contends are evidence of Defendants' wrongdoing.  Ms. Block continued to refuse to include the content of those documents.  The court pointed specifically to Ms. Block's failure to include or excerpt a Wikipedia article that was allegedly evidence of someone's wrongdoing.  Dec. 1, 2014 ord. (Dkt. # 61) at 5.  Ms. Block again refused to attach the article or excerpt or describe its contents, even as she contended that the publication of the article was in instance of "wire fraud."  RS at 34.  The court noted that Ms. Block had not attempted to explain how it could infer Diana Rose's allegedly retaliatory motive.  Dec. 1, 2014 ord. (Dkt. # 61) at 12.  Ms. Block's new complaint offers nothing to explain Ms. Rose's retaliatory motive.  The court noted that allegations about complaints someone made to an administrative law judge about Ms. Block's conduct suffered because it was "just as plausible (if not more plausible)" that the complainant made those allegations because they were meritorious, rather than to retaliate.  Dec. 1, 2014 ord. (Dkt. # 61) at 13.  Ms. Block improved that allegation by at least naming the people responsible.  ¶ 3.35 (naming Defendant Joe Beavers and non-party Margaret King).  She did not, however, offer any basis for the court to conclude

ORDER – 4

1    that the unspecified statements they made to the administrative law judge were

2    retaliatory.

3            The court could dismiss Ms. Block's complaint or take other action because she

4    refused to comply with the December 1 order.  Instead, the court reviews both her

5    amended complaint and her RICO Statement, because they are no more successful than

6    her previous complaint at stating a claim against any of the 14 Defendants, and because

7    they amply demonstrate that Ms. Block would not state a claim against them even if the

8    court were to grant her another opportunity to amend her complaint.  The court does not

9    purport to address every allegation in these 150 pages.  It instead offers illustrative

10   examples to explain the court's conclusion that none of those allegations state a claim

11   against any of the 14 Defendants upon which the court can grant relief.

### III.  ANALYSIS

13           The court now considers whether the more than 150 pages of allegations Ms.

14   Block has placed before the court state a claim for retaliation in violation of the First

15   Amendment, a RICO violation, or a Sherman Act violation.  The court does so subject to

16   the strictures of Federal Rule of Procedure 12(b)(6), which requires the court to assume

17   the truth of the complaint's factual allegations and credit reasonable inferences arising

18   from those allegations.  *Sanders v. Brown*, 504 F.3d 903, 910 (9th Cir. 2007).  The

19   plaintiff must point to factual allegations that "state a claim to relief that is plausible on

20   its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 568 (2007).  If the plaintiff succeeds,

21   the complaint avoids dismissal if there is "any set of facts consistent with the allegations

22   in the complaint" that would entitle the plaintiff to relief.  *Id.* at 563; *Ashcroft v. Iqbal*,

23   556 U.S. 662, 679 (2009) ("When there are well-pleaded factual allegations, a court

24   should assume their veracity and then determine whether they plausibly give rise to an

25   entitlement to relief.").  The court typically cannot consider evidence beyond the four

26   corners of the complaint, although it may rely on a document to which the complaint

27   refers if the document is central to the party's claims and its authenticity is not in

28   ORDER – 5

question.  *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006).  The court may also consider evidence subject to judicial notice.  *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

**A.  Elements of Retaliation, RICO, and Antitrust Claims**

To give context to the court's review of Ms. Block's complaint and RICO Statement, the court briefly notes the elements of each of Ms. Block's three claims.

A First Amendment retaliation claim invoking 42 U.S.C. § 1983, as the court discussed in the December 1 order, requires a plaintiff to identify a government action that would deter a reasonable person from exercising First Amendment rights, and to show that the desire to deter that person from exercising those rights was a but-for cause of the action.  Dec. 1, 2014 ord. (Dkt. # 61) at 9-10.

A civil RICO claim requires a plaintiff to plead (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (5) causing injury to the plaintiff's business or property."  *Grimmett v. Brown*, 75 F.3d 506, 510 (9th Cir. 1996).  Those requirements come from 18 U.S.C. § 1962, which states the requisites of a RICO violation, and 18 U.S.C. § 1964(c), which permits a "person injured in his business or property by reason of a violation of section 1962" to file a civil suit.  The acts that constitute "racketeering activity," often referred to as "predicate acts," are listed at 18 U.S.C. § 1961(a).  *Turner v. Cook*, 362 F.3d 1219, 1229 (9th Cir. 2004).  RICO predicate acts include dozens of federal crimes as well as some analogous state-law crimes.

Finally, Ms. Block's antitrust claim invokes § 1 of the Sherman Act, via 15 U.S.C. § 15, the portion of the Clayton Act that permits a person "injured in his business or property by reason of anything forbidden in the antitrust laws" to bring a civil suit.  Section 1 of the Sherman Act literally prohibits "[e]very contract, combination in the form of trust or otherwise, or conspiracy in restraint of trade or commerce . . . ."  15 U.S.C. § 1.  That literal restriction, however, applies only to a narrow category of conduct that is deemed *per se* anticompetitive.  *Texaco Inc. v. Dagher*, 547 U.S. 1, 5 (2006).

ORDER – 6

Because Ms. Block has not identified any conduct within the scope of the *per se* rule, she is obligated to plausibly plead a conspiracy an anticompetitive effect in a relevant market. *Id.* at 5-6 (2006). Ms. Block must plead "not just ultimate facts (such as a conspiracy), but evidentiary facts which, if true, will prove: (1) a contract, combination or conspiracy among two or more persons or distinct business entities; (2) by which the persons or entities intended to harm or restrain trade or commerce among the several States, or with foreign nations; (3) which actually injures competition." *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1047 (9th Cir. 2008)."

**B.     Ms. Block's Allegations of Concerted Criminal Conduct are Both Factually Implausible and Legally Inaccurate.**

Ms. Block's complaint outlines a history of conflict with government and government officials that began in 2008 when she requested public records from the City of Gold Bar. According to her, a Gold Bar water employee had committed an "act of domestic terrorism" involving "sabotage[] [of] the City's water system" that Gold Bar's Mayor, Crystal Hill, did not report. ¶ 3.9. The complaint does not reveal to whom Ms. Block believes Ms. Hill should have reported. The same employee also misused "the City's petro card for his own personal gain." ¶ 3.9. According to Ms. Block, Ms. Hill, along with Joe Beavers (who later became Gold Bar's mayor) and Dorothy Croshaw,[3] "decided to cover up [the employee's] crimes in exchange for the City assisting [him] with obtaining a new job with the City of Bellevue, giving him unfettered access to unemployment benefits and $10, 0000.00 Gold Bar taxpayer monies."[4]  *Id.*  Ms. Block

_____

[3] Ms. Croshaw is not a Defendant, she is one of Ms. Block's "non-parties to be named later." Ms. Block nonetheless calls Ms. Croshaw a defendant at least 10 times in her complaint. ¶¶ 3.6, 3.9, 3.18, 3.19, 3.24, 3.27, 3.30, 3.52, 3.53, 3.55. Ms. Block repeats that practice with many (perhaps all) of the "non-parties to be named later." *E.g.*, ¶ 3.13 (referring to "WSBA defendants"), ¶ 3.33 (referring to Margaret King, the WSBA, and Linda Eide as defendants), ¶ 3.74 (referring to WSBA and Linda O'Dell as defendants), ¶ 3.75 ("defendant Eide and O'Dell"), ¶ 3.76 (referring to Sean Reay as a defendant). Between Ms. Block's complaint and RICO Statement, she uses the term "defendant" more than 100 times to describe people and entities other than the 14 Defendants she previously named.

[4] Except where the court uses brackets to indicate otherwise, the court has endeavored to reproduce the allegations of Ms. Block's complaint just as she wrote them.

ORDER – 7

contends that the payment was a "settlement," which Gold Bar made "so that members of the enterprise would not have to publicly acknowledge that it was condoning theft." ¶ 3.10.  This was an "exchange" so that "for $10,000 and unemployment benefits the enterprise would keep the theft of public money confidential even though evidence of the theft was overwhelming." ¶ 3.10.  According to Ms. Block, "[t]his constituted bribery and was thus a predicate act under RICO." ¶ 3.10.

The court pauses to consider these allegations, because they are emblematic of the shortcomings of many of Ms. Block's allegations.  According to her, a Gold Bar employee committed "domestic terrorism" by tampering with Gold Bar's water wells, apparently used some sort of City gasoline account for his personal benefit, and then was paid off so that the "enterprise" would not have to acknowledge theft.  The court cannot conceive why it was necessary to pay a person who had committed "domestic terrorism" and "theft" to keep quiet.  People who have committed crimes typically require no inducement to keep from announcing as much.  Ms. Block offers no reason for this "exchange," thus making her allegation implausible.

Whereas Ms. Block offers merely implausible allegations about the actions of the Gold Bar government, her allegations about the "enterprise" are incomprehensible.  As the court has noted, proof of an "enterprise" engaged in racketeering activity is an essential element of a RICO claim.  It is at least conceivable that Gold Bar officials might have some interest in addressing crimes that a City employee committed.  But the "enterprise" in this case consists not only of Gold Bar officials, but every other Defendant and most (but perhaps not all) of the "non-parties to be named later," including the WSBA and many of its officials.  The purpose of that enterprise was, according to Ms. Block, to "dominat[e] the WSBA and its disciplinary system so as to allows prosecutors, defense attorneys, practitioners at large firms, and non-minority attorneys to practice unethically and evade accountability for their misconduct." ¶ 3.2 The "enterprise" has other goals, but all of them pertain to the WSBA. *See* ¶¶ 3.3, 3.25,

ORDER – 8

3.74.  What interest would this "enterprise" have in Gold Bar's internal affairs?  Gold Bar, according to the 2010 census, is a city of just over 2,000 residents.[5]  Why would an enterprise furthering the illicit goals of the WSBA seek to control Gold Bar's government?  The answer to that question appears nowhere in the complaint.  A reader patient enough to reach page 106 of Ms. Block's RICO statement will discover her assertion that "[w]hile the Gold Bar defendants started out as a separate enterprise, it has now merged with the WSBA enterprise to comprise of one entity."  RS 106.  That enterprise, Ms. Block explains, has "taken over the Government of Gold Bar."  RS 106.  Ms. Block does not say why.

In addition, Ms. Block concludes this implausible block of allegations with an incorrect legal conclusion.  She asserts that the "settlement" that Gold Bar reached with its former water employee was "bribery," a RICO predicate act.  Ms. Block offers nothing to explain that legal conclusion.  The predicate act of "bribery" in RICO is the crime described at 18 U.S.C. § 201.  That crime has many permutations, but in general requires an offer of something of value to a public official or a demand by a public official for something of value, in exchange for an official act by the public official.  Here, the "bribe" is going the wrong way: from a collection of public officials to a person who is not a public official.  The "bribe," moreover, was not to induce an official act, but rather to buy the former employee's silence.  Ms. Block has not alleged bribery.

Ms. Block alleges that members of Gold Bar's government, upset about her public records request, "agreed among themselves to retaliate against the Plaintiff by defaming her and by going after her bar license."  ¶ 3.11.  They did so, she alleges, to "'send a message' to other citizens as to what would happen if they opposed corruption."  ¶ 3.11.  According to her, this was "extortion and was therefore a predicate act under RICO."  ¶ 3.11.

---

[5] *http://www.census.gov/2010census/popmap/ipmtext.php?fl=53.*

ORDER – 9

As with her legal conclusion as to "bribery," her legal conclusion as to "extortion" is facially defective.  Extortion as a RICO predicate act is either the federal crime described in the Hobbs Act (18 U.S.C. § 1951) or extortion "chargeable under State law and punishable by imprisonment for more than one year . . . .'  18 U.S.C. § 1951. Extortion in violation of the Hobbs Act is "obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right."  18 U.S.C. § 1952(b).  The "obtaining" element "requires a showing that a defendant received something of value from the victim of the alleged extortion and that the "thing of value can be exercised, transferred, or sold."  *United States v. McFall*, 558 F.3d 951, 956 (9th Cir. 2009).  Washington law similarly requires that the defendant 'obtain or attempt to obtain by threat [the] property or services of the owner . . . ."  RCW 9A.56.110.  Ms. Block does not allege that anyone obtained anything of value from her.  For at least that reason, she fails to plead the predicate act of extortion under federal law or Washington law.

In opposing the motion to dismiss, Ms. Block cites older case law noting that threats impacting "intangible property" can constitute extortion.  *See, e.g.*, *United States v. Zemek*, 634 F.2d 1159, 1174 (9th Cir. 1980).  She does not acknowledge that the Supreme Court curtailed that line of authority in *Scheidler v. Nat'l Org. for Women, Inc.*, 537 U.S. 393 (2003).  Later Ninth Circuit authority acknowledges that even under the assumption that extortion includes threats impacting intangible property, the "obtaining" requirement mandates that the defendant be able to sell, transfer, or exercise that intangible property.  *McFall*, 558 F.3d at 957.  Ms. Block's pleadings repeatedly fail to identify property, tangible or intangible, that any defendant acted to "obtain." Emblematic of this deficiency is her repeated assertion that defendants or others acted to "extort" her "democratic rights."  RS at 16, 19, 25, 32, 34, 46.

ORDER – 10

**C.    Ms. Block's Allegations of Merely Defamatory Action Are Not Allegations of Retaliation.**

Also unavailing are Ms. Block's allegations that Defendants retaliated against her by "defaming" her.  Ms. Block has not brought a defamation claim.  She has brought a First Amendment retaliation claim, one that she cannot prove merely by alleging defamation.  Public officials and others, just like Ms. Block, have First Amendment rights.  *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 687 (4th Cir. 2000).  When a "public official's alleged retaliation is in the nature of speech, in the absence of a threat, coercion, or intimidation intimating that punishment, sanction, or adverse regulatory action will follow, such speech does not adversely affect a citizen's First Amendment rights, *even if defamatory*."  *Id.* (emphasis added).  Moreover, retaliatory words that are defamatory are actionable via the First Amendment only when the damage to the plaintiff's reputation is accompanied by damage to more tangible interests.  *Gini v. Las Vegas Metro. Police Dep't*, 40 F.3d 1041, 1045 (9th Cir. 1994).

Many of Ms. Block's allegations of retaliatory conduct are merely her own complaints about the exercise of free speech by others.  She complains that Defendants disseminated either her "criminal history" and "mental health history" or information that purported to be her criminal history and mental health history but was not, ¶¶ 3.18, 3.19, that Defendants accused her of non-criminal harassment, ¶ 3.25, that a Defendant said that she was "an unemployed lawyer who had been treated at a mental health facility," ¶ 3.26, that a Defendant said that she "needs a hysterectomy, [because] she'd be better off," ¶ 3.28, that a Defendant said that he had "no use for non-Christians like Block," ¶ 3.34, that Defendants posted "defamatory, derogatory, untruthful and harmful articles about Block on a blog spot titled the Sky Valley Chronicle," ¶ 3.36,[6] that one of those articles referred to Ms. Block as a "coward," "snake in the grass," "punk," and "scumbag," ¶ 3.37, that a Defendant  "tweet[ed]" that "I can't wait to go to your

---

[6] Ms. Block devotes many to her allegations to complaining about articles defendants wrote for publication on the Sky Valley Chronicle website.  ¶¶ 3.40, 3.50, 3.41, 3.82.

ORDER – 11

1   disbarment hearing," ¶ 3.57, that Defendants posted on Wikipedia an unspecified "attack

2   piece" about Ms. Block, ¶¶ 3.60, 3.61, 3.63, 3.81, and that Defendants "publically

3   ridicule[d] and defame[d] [her] name" at Gold Bar council meetings, ¶ 3.67.  Even if one

4   of the 14 Defendants actually committed these acts of expression targeting Ms. Block,

5   they are not actionable as First Amendment retaliation.

6   **D.    Ms. Block's Allegations as to "Bar Complaints" Do Not State a Claim, and
          the Court Will Not Permit Her to Amend Her Complaint to Sue the WSBA.**

7
8           Much of Ms. Block's complaint is devoted to asserting that one or more

9   Defendants filed "bar complaints" against her or conspired to do so.  Those allegations do

10  not amount to a plausible retaliation claim for the simple reason that Ms. Block has failed

11  to allege the content of even one of these "bar complaints."  According to Ms. Block, at

12  least one of those complaints resulted in a July 2014 WSBA hearing.  ¶ 3.77.  Ms. Block

13  says nothing about the subject matter of that hearing or its outcome.

14          Without knowing what Defendants (or anyone else) were complaining to the bar

15  about, the court cannot draw the conclusion that the bar complaints were retaliatory.

16  Although the court is aware of no authority expressly addressing "retaliatory" bar

17  complaints, they are in many respects akin to complaints of criminal conduct made to a

18  prosecutor.  A criminal complaint to a prosecutor is retaliatory only if the complaint did

19  not establish probable cause that a person committed a crime.  *Hartman*, 547 U.S. 250,

20  265-66 (2006) (holding that Plaintiff has burden of proving absence of probable cause).

21  Here, Ms. Block's refusal to address the content of the bar complaints means that she has

22  not plausibly pleaded an absence of cause to make them.  In addition, without knowing

23  the content of the bar complaints, the court is in no position to reach the plausible

24  conclusion that the desire to retaliate (as opposed to the desire to make legitimate

25  complaints of Ms. Block's bar-related misconduct) motivated them.

26          Ms. Block's repeated allegations about unspecified bar complaints against her are

27  also the bridge that allegedly connects the Gold Bar and Snohomish County Defendants

28  ORDER – 12

she has sued to the WSBA and its officers.  The court is at a loss to understand why the WSBA would conspire with Gold Bar and Snohomish County regarding Ms. Block. Defendants associated with Gold Bar and Snohomish County at least have a potential reason to target Ms. Block, because they were allegedly upset by her public record requests and articles she published on her "Gold Bar Reporter" website.  There is no allegation, however, that the WSBA had any axe to grind with Ms. Block, at least until it received unspecified "bar complaints" about her.  Even if the court assumes that the WSBA did something wrong in investigating or prosecuting those bar complaints, there is no plausible allegation that it or its officers did so for a retaliatory purpose.

Ms. Block offers largely implausible (if not incomprehensible) contentions that people associated with Gold Bar and Snohomish County worked in concert with the WSBA to pursue the bar complaints.  It is plausible, of course, that the WSBA would communicate with someone who had made a bar complaint to develop the subject matter of the complaint.  Ms. Block, however, contends that the WSBA conspired with Gold Bar and Snohomish County Defendants *before* the filing bar complaints to "fix" a case to "disbar" Ms. Block.  ¶¶ 3.23, 3.27.  She contends, for example, that in March 2009 a law firm working for Gold Bar received unspecified "personal identifying information regarding [her]" as well as unspecified "non-conviction criminal history records" from two people associated with the WSBA.  ¶ 3.15.  They provided that information so that Gold Bar could file bar complaints against her.  *Id.*  But the WSBA has no need to distribute information to others to inquire into potential misconduct by one of its members.  150 pages of Ms. Block's pleading leave the court with no basis at all to understand why the WSBA would conspire with Defendants.

It is apparent that Ms. Block wishes to pursue some sort of claim against the WSBA.  This order will not address that claim, because the court has prohibited Ms. Block from amending her complaint to sue the WSBA or its officials.  Ms. Block has repeatedly ignored that order, referring to WSBA officials repeatedly as "defendants,"

ORDER – 13

and expending large portions of her complaint and RICO Statement discussing WSBA actions that have no bearing on Ms. Block's claims against the 14 Defendants. This order makes only two rulings with respect to Ms. Block's allegations against the WSBA. First, the court rules that she has not plausibly alleged that the WSBA conspired with any of the Defendants in this case to take any action against Ms. Block. Second, the court rules that because she has not demonstrated she can state claims against the 14 Defendants she originally sued, the court will not entertain an amendment of the complaint in this suit to attempt to state claims against the WSBA or its employees.

**E.     Ms. Block Has Not Plausibly Stated a RICO Claim.**

Ms. Block's RICO claim fails for many reasons, but for the purposes of expediency, the court rules today only that she has failed to allege a predicate act. The court has already explained why several of her allegations of "bribery" and "extortion" are inadequate. *See supra* Part III.B. She repeats the same errors in other extortion allegations. She alleges, for example, that a Snohomish County prosecutor committed "extortion" by "wrongfully threaten[ing] [her] with jailing." RS at 10. She provided no details at all about either the threat or what property the prosecutor was attempting to obtain by making the threat. Her later clarification that the prosecutor threatened, during a conference call, to have her arrested if she continued in efforts to depose a defendant is no better. RS at 35. One cannot "obtain" another's right to conduct a deposition.

Ms. Block repeats allegations of "extortion" throughout her RICO statement, always failing to allege anything that would violate the Hobbs Act or amount to extortion under Washington law. *E.g.*, RS at 20 (alleging that destruction of public records was "extortion" and "blackmail"), RS at 23 (alleging that writing a letter stating that Ms. Block was an "unemployed lawyer and had been treated at a mental health facility" was "extortion"), RS at 23 (alleging that filing a bar complaint against her was "extortion"), RS at 25 (alleging that a telephone call to an administrative law judge to complain about Ms. Block's conduct was "extortion"), RS at 25 (alleging that filing of a motion for

ORDER – 14

sanctions against Ms. Block was "extortion"), RS at 26 (alleging that assault on a man in Gold Bar council chambers was "extortion"), RS at 27 (alleging that throwing a compact disk at Ms. Block was "extortion"), RS at 32 (alleging that assault on a reporter was "extortion"), RS at 34 (alleging that murder threat, unaccompanied by demand for property or anything of value, was "extortion"), RS at 42-43 (alleging that Sky Valley Chronicle article stating that a "group of people" were "preparing to file criminal complaints of cyber stalking against Block" was "part of the extortion scheme").

Similarly unavailing is an allegation that a Defendant committed "forgery" by altering an email to make it appear as if Ms. Block had sent it. RS at 19. The only "forgery" crime enumerated as a RICO predicate act is forgery of a passport in violation of 18 U.S.C. § 1543.

In another instance, she uses the phrase "predicate act" without referring to any criminal conduct described in 18 U.S.C. § 1961. *E.g.*, ¶ 3.25 (referring to newspaper article intimating that Ms. Block harassed Gold Bar's mayor as "predicate acts").

The preamble to Ms. Block's complaint states that she is stating a "cause[] of action" for "mail and wire fraud in violation of 18 U.S.C. § 1341." The court ignores that a civil complaint cannot state a claim for mail or wire fraud, both of which are criminal acts. The court also ignores that 18 U.S.C. § 1341 describes only mail fraud, not wire fraud, which is described at 18 U.S.C. § 1343. The court further ignores that despite Ms. Block's promise to allege mail and wire fraud, her complaint contains no reference to either crime except in its preamble. Instead, the court notes that none of the dozens of references to wire fraud or mail fraud in Ms. Block's RICO Statement actually describe an instance of wire or mail fraud. Both crimes require a defendant to commit fraudulent acts via mail or wire to misappropriate the property of others. *United States v. Jones*, 472 F.3d 1136, 1139 (2007). Intangible rights are not "property" within the meaning of wire fraud or mail fraud statutes. *Skilling v. United States*, 561 U.S. 358, 401-02 (2010). Ms. Block's RICO Statement includes no allegations that anyone who committed mail or wire

ORDER – 15

fraud did so to obtain "property" within the scope of the statutes.  She repeatedly asserts that the WSBA's alleged ex parte contacts during disciplinary proceedings constitute mail fraud.  RS at 79-85, 87, 89, 91, 93-95, 98-100.  She is mistaken.  She asserts that the WSBA's failure to mail disclosures of ex parte contacts and conflicts of interest is mail fraud by omission.  RS at 65, 72.  She is mistaken.  She contends that publishing the Wikipedia article whose contents she refuses to reveal was an instance of wire fraud.  RS at 34.  She is again mistaken.  There are no plausible allegations of mail or wire fraud in Ms. Block's complaint or RICO Statement.

Ms. Block has not alleged any predicate acts, much less a pattern of predicate acts that suffices to state a RICO claim.  Her RICO claim fails for at least that reason.

**F.    Ms. Block Has Not Plausibly Stated a Sherman Act Claim.**

Ms. Block's antitrust claim is doomed for many reasons.  First, the central allegation of that claim, that the WSBA targets solo practitioners and minorities for discipline in order to "steer[] the market for attorney services" toward "large firms, prosecutors, defense attorneys and other favored groups" is wholly implausible.  ¶ 6.1a.  Ms. Block's complaint and RICO statement allege that the WSBA has targeted her and a handful of other practitioners; it does not begin to plausibly allege that these actions have had an antitrust impact on the market for attorney services in Washington.  She asserts that the WSBA's actions have resulted in higher costs for legal services, but provides nothing to make that allegation plausible.  ¶ 6.1b.

Second, the focus of Ms. Block's antitrust claim is the WSBA.  The December 1, 2014 order prohibited her from amending her complaint in this case to sue Defendants other than those she named in her previous pleading.  Her attempt to state claims against the WSBA in this suit is a blatant violation of that order.

Third, because Ms. Block has failed to allege plausibly that any of the 14 Defendants in this case conspired with the WSBA for any purpose, she has not stated

ORDER – 16

1    antitrust claims against those Defendants even if the WSBA had somehow committed an

2    antitrust violation.

3    **G.    Ms. Block Has Not Plausibly Asserted a Retaliation Claim.**

4            Finally, the court returns to the claim that was the subject of the complaint the

5    court dismissed in December 2014 – the claim that Defendants retaliated against Ms.

6    Block for exercising her First Amendment rights.  The court has already discussed

7    several of the inadequacies of those allegations in this order, and discussed many more in

8    its December 1 order.

9            Rather than repeat itself, the court summarizes its conclusions.  Ms. Block's

10   retaliation claims suffer from two problems.  First, because she often fails to be specific

11   about the content of her First Amendment expression that led to the retaliation or to

12   describe with any specificity the nature of an allegedly retaliatory act, the court is often in

13   no position to plausibly infer that the act was retaliatory.  Far too often, Ms. Block

14   describes something that a Defendant did to her without providing enough detail to make

15   a retaliatory explanation more likely than a non-retaliatory one.  Second, as to her

16   allegations regarding the unspecified "bar complaints" and unspecified "criminal

17   complaints," she has not provided enough detail to give rise to a plausible inference that

18   the person making the complaint lacked cause to make those complaints.

19           The court also observes that Ms. Block frequently decries that Defendants (and

20   others) took actions against her by using the resources of either Gold Bar or Snohomish

21   County.  Putting aside that Ms. Block has not established that these acts are retaliatory,

22   Ms. Block does not have standing to sue over the misuse of county or municipal

23   resources.

24   **H.    The Court Will Not Grant Ms. Block Leave to File Amended Pleadings.**

25           When the court gave Ms. Block leave to amend in December 2014, it stated that if

26   "it is necessary to dismiss Ms. Block's amended complaint for the same deficiencies that

27   the court has described in this order, the court will dismiss this case with prejudice."

28   ORDER – 17

1   Dec. 1, 2014 ord. (Dkt. # 61) at 15.  Ms. Block responded with a complaint with the same

2   deficiencies, but applied to a broader range of conduct and "non-parties to be named

3   later."  Ms. Block has had ample opportunity to state a claim.  The court is convinced,

4   moreover, that an additional opportunity to amend her complaint would simply lead to

5   repetition of the same approach that has doomed Ms. Block's pleadings so far.  The court

6   therefore dismisses her complaint with prejudice.

7                  **IV.   MOTION FOR LEAVE TO FILE "RICO STATEMENT"**

8           Before concluding, the court addresses Ms. Block's motion for leave to file her

9   RICO Statement.  A federal district court has discretion to request a RICO statement,

10  either on a case-by-case basis or as a matter of district-wide policy.  A RICO statement is

11  meant to be a tool for the court to screen out frivolous RICO claims by requiring specific

12  information to assist the court's evaluation of a RICO claim.  *Wagh v. Metris Direct, Inc.*,

13  363 F.3d 821, 827 (9th Cir. 2003), *overruled in part on other grounds by Odom v.*

14  *Microsoft Corp.*, 486 F.3d 541, 551 (9th Cir. 2006).  The Eastern District of Washington,

15  for example, has mandated that a plaintiff invoking RICO file a "RICO Case Statement"

16  addressing dozens of questions about the plaintiff's RICO claim.  Local Rules E.D.

17  Wash. CR 3.2.  Ms. Block's RICO Statement addresses many of those questions.

18          This court did not ask for a RICO statement from Ms. Block and this District has

19  no local rule or general order that addresses RICO statements.  It does not help matters

20  that Ms. Block filed her RICO Statement more than two weeks after the court's deadline

21  for submitting her amended complaint (then submitted an amended RICO Statement a

22  week later).  It also does not help matters that Ms. Block asserts in her opposition to the

23  motion to dismiss that her RICO Statement amplifies not only her RICO claim, but her

24  other claims as well.  Pltf.'s Opp'n (Dkt. # 82) at 2.

25          Defendants urge the court not to allow Ms. Block's RICO Statement.  The court

26  would adopt their suggestion if the RICO Statement prejudiced Defendants.  It does not,

27  because it is no more successful at stating a RICO claim (or any other claim) than Ms.

28  ORDER – 18

Block's current complaint.  For that reason only, the court declines to strike the untimely and unnecessary RICO Statement.  No one should mistake that ruling as approval of Ms. Block's dilatory tactics, or as an invitation any future litigant to submit a RICO Statement where the court has not requested one.

Finally, the court notes that Defendants used their opposition to Ms. Block's motion to file her RICO Statement as an opportunity to inform the court that Ms. Block continues to engage in the litigation misconduct that the court barred in the December 1 order.  As the court explained in that order, its authority is limited to regulating Ms. Block's conduct as a party in this lawsuit.  The court cannot prevent her from continuing her apparently interminable conflict with Gold Bar, Snohomish County, and the people who work on their behalf.  The court suggests no approval of that conflict or of Ms. Block's conduct during this litigation.  Defendants' opposition to the RICO Statement motion contains no request for sanctions, and the court declines to conduct a sua sponte inquiry into whether Ms. Block's conduct since the December 1 order is sanctionable.

## V.  CONCLUSION

For the reasons stated above, the court GRANTS Defendants' motion to dismiss as well as Ms. Block's motion to submit her RICO Statement.  Dkt. # 66, 73.  The court dismisses Ms. Block's complaint.  That complaint is with prejudice as to her retaliation, RICO, and Sherman Act claims against the Defendants she named in her complaint.  It is without prejudice as to her claims against anyone else, except to the extent claims against others rely on the allegations that the court rejected as implausible.  The clerk shall enter judgment for Defendants.

DATED this 8th day of July, 2015.

*Richard A Jones*

The Honorable Richard A. Jones
United States District Court Judge

ORDER – 19